AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

FILED
APR 20 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | | |
|---|---|---|
| United States of America<br>v.<br>Edward Santos ESPIRITU, aka "Eddie-boy"<br><br>*Defendant(s)* | ) ) ) ) ) ) | Case No. 4-11-70448 MAG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____January 14, 2011____ in the county of ____Contra Costa____ in the ____Northern____ District of ____California____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute a Schedule II controlled substance, namely, a mixture and substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:

See attached AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

☒ Continued on the attached sheet.

APPROVED AS TO FORM:

_____
AUSA JAMES C. MANN

_____
*Complainant's signature*

FBI Special Agent Patrick Joseph Ernst
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __Apr 20 2011__

_____
*Judge's signature*

Laurel Beeler, U.S. Magistrate Judge
*Printed name and title*

City and state: ____Oakland, California____



Document No.
District Court
Criminal Case Processing

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Patrick Joseph Ernst, Special Agent of the Federal Bureau of Investigation, being duly sworn, hereby declare as follows:

## I. INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) assigned to the San Francisco Division and have been so employed since August 15, 2010. As a federal agent, I am authorized to investigate violations of the laws of the United States and I am a law enforcement officer with authority to execute warrants issued under the authority of the United States. My FBI Special Agent training consisted of a twenty-one week new agent training class during which I received instruction on various aspects of federal crime. Prior to becoming an FBI Special Agent, I was a Special Agent for the Internal Revenue Service–Criminal Investigation (IRS–CI) for approximately five years. As a Special Agent for IRS–CI, I trained at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia for twenty-four weeks. Training at FLETC consisted of instruction on legal principles and a variety of federal criminal violations, including money laundering, tax evasion, and other tax-related crimes. I have conducted criminal investigations involving investment fraud, money laundering, tax evasion and other financial crimes, as well as violations of the Bank Secrecy Act. I have also participated in the planning and execution of numerous federal search, seizure, and arrest warrants involving the above violations.

2. During the course of this investigation, I have consulted with Special Agent Gregory M. Eckhart. SA Eckhart has been an FBI Special Agent since August 2003. He is currently assigned to the San Francisco Field Division of the FBI, and investigates cases involving gangs, drug trafficking, and violent fugitives. He has received training at the FBI Academy in Quantico, Virginia, including training on violent street gangs, criminal case management, informant development, Title III investigations and the identification, use, packaging and sales of controlled substances. SA Eckhart also attended numerous training schools and seminars related to gangs, violent crime, and narcotics investigations, including many that provided instruction on drug-trafficking methods, money laundering methods, and

techniques for investigating those crimes. SA Eckhart has participated in the execution of numerous state and federal search warrants and arrests involving alleged narcotics trafficking, and he has participated in numerous investigations of narcotics traffickers and violent street gangs. These investigations have involved the use of confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews and the service of search and arrest warrants.

3. SA Eckhart has interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users. He is familiar with the manner in which narcotics traffickers smuggle, package, transport, store and distribute narcotics, as well as how they collect and launder drug proceeds. He has had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the distribution methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. SA Eckhart has also examined documentation of various methods by which methamphetamine, cocaine, marijuana, and other illicit drugs are smuggled, transported and distributed. He has participated in surveillance of narcotics traffickers. During surveillance, SA Eckhart has observed narcotics transactions, counter-surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings. He has also participated in investigations that involved the interception of wire communications, and he has been directly involved in the review and deciphering of intercepted coded-conversations between narcotics traffickers that were later corroborated by surveillance or by defendants' statements.

4. SA Eckhart is one of the case agents participating in the investigation of Joseph Solice ABBATE, aka Sherman Joseph Fisher, aka "Butch," aka "Mac Dre," aka "Andre Hicks" (ABBATE); Ramon RUBIO, aka "Primo" (RUBIO); and others, for narcotics trafficking and firearms-related offenses.

## II. PURPOSE OF THIS AFFIDAVIT

5. This affidavit is being submitted in support of a criminal complaint and arrest warrant charging Edward Santos ESPIRITU with possession with the intent to distribute

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1).

6. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that, on or about January 14, 2011, Edward Santos ESPIRITU knowingly and intentionally possessed with intent to distribute a Schedule II controlled substance, namely, a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The statements contained in this affidavit are based on information provided to me by law enforcement officers as well as my training, experience, and knowledge of this investigation.

7. In this affidavit I describe wire and electronic communications that have been intercepted pursuant to the interception orders in this investigation. In doing so, I have summarized portions of some, but not all, of the intercepted conversations. My summaries of these conversations are based on my personal review of recordings of the intercepted conversations, my training, experience, and knowledge of this investigation, notes of monitoring personnel and/or reviewers which were taken while the recorded conversations were occurring or at the time the conversations were reviewed, and/or other law enforcement personnel as to the meaning of vague or coded language and certain words and phrases. My summaries of the conversations are overviews and are not intended as verbatim transcripts. Even so, I have included in quotation marks my best attempt to provide a draft transcript of some of the speakers' words during the conversations. In some instances, I have only set forth the pertinent parts of sentences and I have used ellipses in some sentences instead of words or phrases that are unnecessary, profane, or repetitive. Subsequent review of the recorded conversations and the preparation of verbatim transcripts may show changes from the summaries provided herein. In addition, I know, based on my training, experience, and knowledge of this investigation (as well as the training, experience, and knowledge of other Agents with whom I have spoken) that criminal street gang members/associates and narcotics traffickers frequently use slang or coded or intentionally vague language when discussing illegal activity, particularly narcotics trafficking

or firearms use and/or possession. When a word or phrase used by a speaker constitutes slang or coded or intentionally vague language (or whose meaning would not be obvious to a layperson) I have provided my interpretation of those words and/or phrases in parentheses. My interpretations are based on my knowledge of and participation in this investigation and my discussions with SA Eckhart and with other experienced law enforcement personnel. My interpretations, however, may change as additional information is learned through the course of the investigation. The actual names of callers have been used where agents believe they have tentatively determined the identities of the callers, or where their voices are recognized by the monitoring personnel or reviewers. Finally, once I have identified the telephone number used by a given person in an intercepted conversation, I will not repeat that telephone number in my descriptions of subsequent intercepted conversations unless that person uses a telephone number different than the number he or she previously used. All times are approximate and all locations are in California unless otherwise noted.

### III. **PROBABLE CAUSE**

8. The wiretap portion of the investigation into the drug-trafficking activities of Joseph Solice ABBATE has been ongoing since September 2010. Over the course of the investigation, Agents have identified ABBATE and Edward Santos ESPIRITU by comparing relevant surveillance observations with their respective DMV photographs. ABBATE and ESPIRITU were identified as the users of the below telephones through the interception of telephone calls made by each of them, and the surveillance conducted of the activities discussed during the intercepted telephone calls (i.e., ABBATE and/or ESPIRITU were seen in the locations or participating in the activities referenced in the preceding telephone calls). Additionally, ESPIRITU's telephone is subscribed in his name.

9. On January 14, 2011, at 5:54 p.m., a call was intercepted between Edward Santos ESPIRITU using (510) 383-0969 (subscribed to Edward Espiritu at 2459 Paloma Street, Pinole, California 94564) and Joseph Solice ABBATE using (510) 860-8197 (Session 26). During the conversation, ABBATE stated: "Hey, I just got some new shit boy, some candy fool."
ESPIRITU responded: "You got some different one too? Damn . . . it was good yesterday. It

was cool." ABBATE stated: "I know, and now that stuff's gone. I got some new shit now, it's hella good." ESPIRITU stated: "Ok, well because I got somebody . . . ." ABBATE then stated: "Yeah, it's new, it's all big pieces, it's like all big, like nice chunks . . . ." ESPIRITU responded: "I probably would like to try it, because I got somebody from Vallejo looking for some too, you know what I mean? A lot." ABBATE stated: "I know. I heard some people got busted in Vallejo like a while back, so they ain't got shit out there right now." Later in the conversation, ESPIRITU stated that the people were looking "for a half-zip to a zip, you know what I mean?" Later still in the conversation, ABBATE confirmed: "They want a half-zip or a zip or something." ESPIRITU confirmed.

10. Based upon the language used by ABBATE and his customers during other intercepted communications throughout this investigation, including conversations between ESPIRITU and ABBATE, I believe that ABBATE was discussing the quality of methamphetamine when he mentioned that it was "all big pieces, it's like all big, like nice chunks ." Additionally, based upon my training and experience, and conversations I have had with other law enforcement officers and agents involved in the investigation of drug-traffickers, I believe that "zip" is a common term for an ounce of narcotics. Thus, I believe that these intercepted communications evidence ESPIRITU's attempts to broker a methamphetamine transaction.

11. At 6:18 p.m., on the same date, a call was intercepted between ESPIRITU and ABBATE (Session 29). During the conversation, ESPIRITU stated: "I'm over here at the Economy Inn off San Pablo Avenue, in San Pablo, okay, then we can go shoot to Vallejo . . ., because they are waiting for me out there." ABBATE asked: "What do they want?" ESPIRITU responded: "Probably a zipper." He then confirmed: "A whole zipper." ABBATE asked: "A zip?" ESPIRITU then stated: "Yeah. We are gonna bring out there and we are going to let them try it . . . you know what I mean? It will be all good. There ain't no one be there but us." ABBATE responded: "I was gonna say, be careful out that way, because . . . . some people just got busted out there, so you never know, they might be trying to . . . set you up or something." ESPIRITU responded: "No this guy, they good out there, she's good." At 6:55 p.m., a call was

intercepted between ESPIRITU and ABBATE (Session 34). During the call, ESPIRITU stated: "Come pick me up then." ABBATE asked: "Where you at?" ESPIRITU responded: "Right here, AutoZone in San Pablo." ABBATE then stated: "I'm coming right now then." At 7:40 p.m., a call was intercepted between ESPIRITU and ABBATE (Session 45). During the conversation, ESPIRITU stated: "She wants to know if it's cool for a four-fifty ($450) for a half." ABBATE stated: "Four fifty for a half?" ESPIRITU confirmed, and ABBATE stated: "Yeah, that's cool, yep." ABBATE then asked: "Why they only want a half or what?" ESPIRITU confirmed and later stated: "He was saying like nine . . . . I'm just trying to make the sale." ABBATE later stated: "Tell them that's cheap for that shit man." At 8:12 p.m., Agents observed ABBATE driving a green Monte Carlo bearing California License Plate 6NNC837 (registered to Edward Santos Espiritu, 277 Violet Road, Hercules) (the Monte Carlo) near the Economy Inn on San Pablo Avenue in Richmond. ABBATE parked along the curb and ESPIRITU got out of the Monte Carlo and turned into the driveway of the Ecomony Inn, at which point he was out of sight.

12. Again, I believe that these intercepted communications and surveillance observations evidence ESPIRITU's brokering of the sale of a half-ounce or ounce of methamphetamine.

## IV. CONCLUSION

13. For the reasons stated above, I believe there is probable cause to believe that, on or about January 14, 2011, Edward Santos ESPIRITU knowingly and intentionally possessed with intent to distribute a Schedule II controlled substance, namely, a mixture and substance

////
////
////
////
////
////
////

containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). I respectfully request that the Court issue the requested criminal complaint and arrest warrant.

_____
Patrick Joseph Ernst
Special Agent, Federal Bureau of Investigation

Sworn to before me this
20th day of April, 2011

_____
HONORABLE LAUREL BEELER
UNITED STATES MAGISTRATE JUDGE

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT ☐ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

---- OFFENSE CHARGED ----

21 U.S.C. § 841(a)(1), Possession With Intent To Distribute A Schedule II Controlled Substance (Methamphetamine)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See Attachment.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

SEALED BY ORDER OF THE COURT

FILED
APR 20 2011
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

---- DEFENDANT - U.S ----

▶ Edward Santos ESPIRITU, aka "Eddie boy"

DISTRICT COURT NUMBER

4-11-70448 MAG

---- PROCEEDING ----

Name of Complaintant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   MELINDA HAAG

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   JAMES C. MANN, AUSA

---- DEFENDANT ----

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
} ☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No
} If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                              Before Judge:

Comments:

## ATTACHMENT TO PENALTY SHEET

21 U.S.C. § 841(a)(1), Possession With Intent To Distribute A Schedule II Controlled Substance (Methamphetamine).

*Depending upon the weight and/or purity of the methamphetamine and whether an 851 Information alleging prior felony narcotics conviction is filed:*

| | | |
|---|---|---|
| (1) | Imprisonment: | Possible Maximum Life Imprisonment |
| | | Possible Mandatory Minimum 5, 10, or 20 Years Imprisonment |
| (2) | Fine: | Possible Maximum $8,000,000 |
| (3) | Supervised Release: | Possible Maximum Lifetime |
| | | Possible Mandatory Minimum 4, 5, 8, or 10-Years |
| (4) | Special Assessment: | $100.00 |